PETER BIONDOLILLO, Appellant, v. ERIE RAILROAD COMPANY, Respondent.

Railroads — master and servant — duty of master to exercise such care and adopt such precautions as will protect a servant at work at a place which may become dangerous.

1. When a master directs the performance of work by his servant at a place which may become dangerous, and the hazard is one that may be anticipated and prevented by the exercise of reasonable care, it is the master's duty to exercise such caution and to adopt such safeguards, for the protection of the servant, as ordinary prudence would suggest in the circumstances.

2. This rule applied in the case at bar where the plaintiff, an employee, was run over by a gravel train while he was engaged in removing a boulder from the track a few feet distant, and the train was started by the engineer upon a signal given by a brakeman, it is claimed, without authority from the conductor who was in sole charge of the train and all the workmen.

Biondolillo v. Erie R. R. Co., 156 App. Div. 921, reversed

(Argued May 12, 1915; decided June 15, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 23, 1913, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Arthur V. D. Chamberlain* for appellant. The court erred in granting defendant's motion for a nonsuit. (*Onesti* v. *C. N. E. R. R. Co.*, 121 App. Div. 554.) Where a nonsuit is granted the plaintiff, on appeal, is entitled to every fact which the jury could have found from the evidence, and to all the favorable inference therefrom, and if two inferences arise, one favorable and the other unfavorable, only the favorable inference can be considered. (*Smith* v. *N. Y. C. & H. R. R. R. Co.*, 177 N. Y. 224; *Dorff* v. *Brooklyn Heights R. R. Co.*, 95 App. Div. 82; *Benjamin* v. *Met. St. Ry. Co.*, 84 N. Y. Supp. 458.) The defendant was bound to furnish a reasonably safe place for the plaintiff to perform his work. (*Crispin* v. *Babbitt*, 81 N. Y. 516; *Pantzar* v. *Tilly-Foster Iron Mining Co.*, 99 N. Y. 368; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280; *Simone* v *Kirk*, 173 N. Y. 7; *Dorney* v. *O'Neil*, 49 App. Div. 8.) This was a negligent act of superintendence within the meaning of the law. (*Cushman* v. *Chase*, 156 Mass. 342; *Davis* v. *N. Y., N. H. & H. R. R. Co.*, 159 Mass. 532; *O'Brien* v. *Nute-Hallett Co.*, 177 Mass. 422; *O'Brien* v. *West End St. Ry. Co.*, 173 Mass. 105; *Bellegrade* v. *Union Bag & Paper Co.*, 90 App. Div. 577; 181 N. Y. 519; *Murphy* v. *N. Y. C. & H. R. R. R. Co.*, 118 N. Y. 527; *Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549.)

*Jesse S. Phillips* for respondent. Defendant's motion for a nonsuit was properly granted. No negligence on the part of the defendant or on the part of Murphy,

defendant's superintendent or vice-principal, was proven. (*Hallock* v. *N. Y., O. & W. Ry. Co.*, 197 N. Y. 450; *Eagen* v. *B. U. T. R. R. Co.*, 200 N. Y. 478.)

WERNER, J. The plaintiff brought this action to recover damages for the loss of a leg which he suffered while he was employed as a laborer by the defendant.

The accident happened on the 8th day of August, 1911, in a gravel pit owned or controlled by the defendant, where a work train was being loaded. The work train consisted of engine, tender and six cars, and the crew was composed of the conductor, engineer, fireman and brakeman. In the gravel pit there were employed by the defendant five or six laborers, one of whom was the plaintiff. The work train had been backed into the gravel pit and was being loaded by a steam shovel that had been installed for the purpose. While this work was in progress a large stone fell from the steam shovel to the track at a point about five feet to the east or rear of the train. At this juncture the conductor, who was in charge of the work, called to the plaintiff to assist in removing this stone. The plaintiff, with several others, responded, and while thus engaged the train was backed upon the plaintiff and crushed his right leg so badly that it had to be amputated. Thus far the facts are conceded, and it is apparent that they give rise to no inferences which can be invoked to sustain the allegation of the plaintiff's complaint. There are a few additional facts, however, which we think are open to conflicting inferences, and if this is a warrantable conclusion the plaintiff, under well settled rules, is entitled to the benefit of the inferences most favorable to him. Where a nonsuit is granted against a plaintiff he is entitled, on appeal, to the support of all the facts which the jury might properly have found from the evidence, and to all the most favorable inferences that may be drawn therefrom. (*Smith* v. *N. Y. C. & H. R. R. R. Co.*, 177 N. Y. 224.)

The conductor was concededly in charge of everything that pertained to this work. He had control of the train and its crew, and also of the laborers in the gravel pit. For this purpose he represented the defendant both at common law and under the Employers' Liability Act. He was chargeable with the exercise of reasonable care for the safety of those employed under him. This general statement, concretely applied to the undisputed facts, means that it was the conductor's duty to employ ordinary prudence in holding this work train stationary while the plaintiff and his companions were engaged in removing the boulder from the track. We think it cannot be said, as matter of law, that the conductor performed this duty simply by his personal omission to give any signal or direction to move the train. For ordinary purposes it was doubtless enough that the conductor should give the signal to the brakeman for transmission to the engineer. But this was an unusual situation. It was necessary to clear the track of this boulder, and this could only be done by men on the track not more than five feet distant from the train. So. long as the train remained stationary the work was safe, but the moment the train was moved it created an instant danger. In these circumstances it was competent, we think, for the jury to find that the conductor, in the exercise of reasonable care, should have done something more than merely to refrain from personally giving any signal for the starting of the train. He could easily have gone further by giving to the engineer directions not to move the train until further notice. This would have required but an instant of time, and it would doubtless have been an effective precaution against the happening of the accident which caused the plaintiff's injury. When a master directs the performance of work by his servant at a place which may become dangerous, and the danger may be foreseen and guarded against by the exercise of reasonable care, it is the master's duty to exercise such

care and adopt such precautions as will protect the servant. (*McGovern* v. *Central V. R. R. Co.*, 123 N. Y. 280; *Murray* v. *Fitchburg R. R. Co.*, 165 Mass. 448.) Whether the conductor in the case at bar, who was concededly the *alter ego* of the master, did exercise such reasonable care was clearly a question of fact that should have been submitted to the jury.

The record discloses that just before the accident to the plaintiff, the train had been moved in obedience to a signal given by the conductor to the brakeman, and by him transmitted to the engineer. For ordinary purposes that may have been an entirely safe method in the prosecution of the work. It may be that in such ordinary circumstances, the master would not be responsible for the brakeman's unauthorized giving of a signal to the engineer that had not been communicated to him by the conductor, and that is really the plea of the defendant. The answer to this suggestion is that a new, and special and unusual danger had been created by an unforeseen occurrence, and the question is whether the defendant omitted in the circumstances to do anything that was required of it under the rule of law to which we have called attention. That is a question for a jury.

The judgment of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, HOGAN, MILLER and SEABURY, JJ., concur.

Judgment reversed, etc.